IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES JOHN GOGAL,
      Plaintiff,

-vs-                                            Civil Action No. 17-144

NANCY A. BERRYHILL,[1]
COMMISSIONER OF SOCIAL SECURITY,
      Defendant.

AMBROSE, Senior District Judge

## **OPINION**

Pending before the court are Cross-Motions for Summary Judgment. (ECF Nos. 7 and 9). Both parties have filed Briefs in Support of their Motions. (ECF Nos. 8 and 10). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment (ECF No. 7) and granting Defendant's Motion for Summary Judgment. (ECF No. 9).

## **I.    BACKGROUND**

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits. Plaintiff filed his application alleging disability since November 16, 2012. (ECF No. 5-7, p. 2). Administrative Law Judge ("ALJ"), John J. Porter, held a hearing on May 11, 2015. (ECF No. 5-3). On August 5, 2015, the ALJ found that Plaintiff was not disabled under the Act. (ECF No. 5-2, 14-29).

After exhausting all administrative remedies, Plaintiff filed the instant action with this court. The parties have filed Cross-Motions for Summary Judgment. (ECF Nos. 8 and 10). The issues are now ripe for review.

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments

prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B.     Due Process**

Plaintiff first argues that he was denied due process of law. (ECF No. 8, pp. 10-12). "[D]ue process requires that any hearing afforded [a Social Security disability] claimant be full and fair." *Ventura v. Shalala,* 55 F.3d 900, 902 (3d Cir.1995). This standard is violated where the ALJ displays a bias or animus against a claimant or a claimant is deprived of the opportunity to present evidence. *Ventura,* 55 F.3d at 902–03. Plainly put, a claimant is entitled to a fair hearing before an impartial ALJ. *Id.* "A party asserting bias must show that the behavior of the ALJ was 'so extreme as to display clear inability to render fair judgment.'" *Roberson v. Colvin*, Civ. No. 13-1183, 2014 WL 4258206 at * 4 (W.D. Pa. Aug. 26, 2014), *citing, Liteky v. United States*, 5410 U.S. 540, 551, 114 S. Ct. 1147, 127 L.Ed.2d 474 (1994).

In support of his position, Plaintiff submits that the ALJ's "actions near the conclusion of the hearing were outrageous." (ECF No. 8, p. 10). Plaintiff argues that the ALJ would not let Plaintiff explain a trip he took to Japan "because it was obvious that the ALJ mistakenly thought that Gogal had attempted to mislead him." *Id.,* at pp. 10-11. After a very careful review of the evidence, I find that while the ALJ may have allowed his temper to flare a bit, Plaintiff has fallen

3

short of demonstrating that the ALJ's conduct was "'so extreme as to display clear inability to render fair judgment.'" *Roberson,* 2014 WL 4258206 at * 4.

During the hearing, the ALJ had asked Plaintiff to discuss his conduct outside of his home and Plaintiff responded but left out discussing his trip to Japan or any other travels. (ECF No. 5-3, pp. 16-17). The ALJ learned about a trip to Japan from Plaintiff's mother's testimony. *Id.,* at pp. 38-39. Having learned of the trip, the ALJ recalled Plaintiff to testify and permitted him to respond and explain the Japan trip and other travels. *Id.,* at pp. 39-41. The ALJ then asked if the evidence was complete and Plaintiff said he believed it was. *Id.,* at p. 41. From this, it is apparent that Plaintiff was given a fair opportunity to provide his full explanation for his travels to the ALJ.

It wasn't until after the evidence was complete that Plaintiff's counsel stated they were not there to hide anything that the ALJ became exasperated. *Id.,* at pp. 41-43. Counsel for Plaintiff and the ALJ engaged in the following exchange.

> ATTY: Well, we're not here to hide anything, your honor. The—as you indicated at the outset, to be considered as –
>
> ALJ: Well, you're not here to hide anything. I said to his man, do you go out of the house? No, judge, I don't go out of the house except for once in a while with my lunch – from wife. His mother says he goes to lunch with his wife most every day. Then I learn from his mother he traveled to Japan. To Japan. It probably wasn't cheap. So, he spent a bunch of money to go to Japan to see a band he likes, but he can't get out of the house to go to work. That's what you want me to believe.
>
> ATTY: Well, no. I want you to credit Dr. Rohr's opinion that he would miss at least three days of work –
>
> ALJ: Perhaps because he's –
>
> ATTY: --per month.
>
> ALJ: --traveling to Japan?
>
> ATTY: No, because of mental illness if you read the report. But the—we've never taken the position that he's lying on a gurney somewhere 24.7. The questions (sic) is whether or not he can function and maintain persistence and pace.

4

| | | |
|---|---|---|
| ALJ: | Okay, I'll take that into consideration. | |

CLMT: May I [inaudible]?

ALJ: No, you may not. That's all we need to do today. We're going [off] the record and complete the hearing –

CLMT: I would like to say –

ALJ: No, I said –

CLMT: -- I don't think—

ALJ: --sir, you're going to be quiet and you're going to leave.

(ECF No. 5-3, pp. 41-43). The hearing then concluded. *Id.*, at 43. I find the testimony above, while displaying frustration by the ALJ, does not rise to the level of "extreme" so as to display an inability to render fair judgment. In fact, after the hearing, Plaintiff submitted a report from Plaintiff's doctor regarding Plaintiff's travel to Japan, which the ALJ acknowledged in his decision. (ECF No. 5-23, pp. 9-10; No. 5-2, p. 26). Consequently, I find that Plaintiff was not denied due process of law.

### C. <u>Credibility</u>

Plaintiff next argues that the ALJ erred by "cherry-picking" through the record. (ECF No. 8, pp. 12-19). To that end, Plaintiff suggests the ALJ misrepresented the record, took words out of context, spun the facts and distorted and ignored evidence. (ECF No. 8, pp. 12-19). An ALJ is charged with the responsibility of assessing Plaintiff's credibility. In evaluating whether a plaintiff's statements are credible, the ALJ will consider evidence from treating, examining and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §416.929(c); SSR 96-7p. The ALJ will also look at inconsistencies between the claimant's statements and the evidence presented. *Id.* I must defer to the ALJ's credibility determinations, unless they are not supported by substantial

evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975).

First, Plaintiff states that the ALJ "mis-characterized Gogal's testimony when he stated: 1) '[Gogal] claims he was suspended from his last job as of his alleged onset date due to his depression which was causing him to call off, unable to get out of bed;'" and 2) when the ALJ states that "the claimant testified that he stopped working because he was suspended for not being able to get out of bed and come to work, due to severe depression." (ECF No. 8, p. 13, citing No. 5-2, pp. 19, 20). The record reveals that the initial paperwork states that Plaintiff stopped working because of his condition(s) and because his office was closing. (ECF No. 5-8, p. 5). He also testified at the hearing that after his second hospitalization he went back to work but went on probation and suspension because he was not able to get the work done. (ECF No. 5-3, pp. 11, 22). Nonetheless, Plaintiff has consistently testified that in November of 2012 he was let go from his job due to a workforce reduction. (ECF No. 8, p. 13). Based on the same, I find the ALJ's statements, while not completely accurate, do not amount to a mischaracterization warranting a remand.

Next, Plaintiff essentially argues that the ALJ erred in discrediting him by attempting to show an inconsistency between his testimony and the record evidence regarding drug and alcohol use. (ECF No. 8, p. 13). Contrary to Plaintiff's suggestion that there is no inconsistency, a review of the record reveals there is substantial evidence of record to support the ALJ's statement that "[t]he claimant also testified that although he used to drink in high school, he only has an occasional drink now, with even one making him very buzzed due his medication (Testimony). However, the record indicated admission of the claimant of casual use of both marijuana and alcohol (Exhibit 10F, pp. 177, 181 and 185)." (ECF No. 5-2, p. 19). Therefore, I find no merit to this argument.

The ALJ also discredits Plaintiff by detailing an inconsistency between Plaintiff's alleged inability to work as of the alleged onset date of November 2012 with Plaintiff's ability to work and

6

seek other jobs. (ECF No. 5-2, p. 20). In support of the same, the ALJ references, *inter alia,* a comment made by Plaintiff to a medical provider where he reported that he was assigned to do an impossible job. *Id.,* citing ECF No. 5-15, p. 15. Plaintiff suggests this is a mischaracterization of the evidence. (ECF No. 8, pp. 13-14). While not articulated in the best manner by the ALJ and not the strongest piece of evidence alone (this was not the only piece of evidence the ALJ used to support this assertion), there is substantial evidence to support the same. (ECF No. 5-2, pp. 14-29). Consequently, remand is not warranted on this basis.

Plaintiff additionally takes issue with the insinuation by the ALJ that Plaintiff's "expressions of desire to work and his pursuit of such efforts, … belie his claim of disability." (ECF No. 8, pp. 14-15). There is nothing improper with the ALJ's consideration of a plaintiff's work history or attempts to work. In fact, an ALJ must consider "the entire case record" in determining the credibility of an individual's statement. SSR 96-7p. In this case, the ALJ appropriately compared Plaintiff's testimony and his claims of disability with, *inter alia,* his work history and his efforts to continue to work and found inconsistencies. (ECF No. 5-2, p. 20). I find no error in this regard.

In reference to Plaintiff's travels, Plaintiff suggests that he "never said he has been unable to leave his house since the onset of his disability." (ECF No. 8, p. 16). The ALJ never said he did. Rather, the ALJ discussed Plaintiff's testimony about ability to leave his house, his treating doctor's records referencing the same, and his trips to Japan and found them to be inconsistent. (ECF No. 5-2, pp. 24-25). There is nothing improper with said comparison.

After the hearing on May 11, 2015, Plaintiff attempted suicide. Plaintiff submits that the ALJ improperly downplayed his post-hearing hospitalization when he noted that "the claimant's reported gesture on his arm with the dull knife required no medical treatment, his commitment was voluntary, and the claimant was not put in a partial hospitalization program upon his release." (ECF No. 8, p. 16, citing, No. 5-2, p. 25). A review of the record reveals, however, the accuracy of said statement. *Id.* Consequently, I find no mischaracterization regarding this

7

statement.

Moreover, Plaintiff argues that the ALJ mischaracterized the progress note of his PCP when he stated that "[t]he claimant expressed no suicidal ideation." (ECF No. 8, p. 16, citing No. 5-2, p. 22). The exhibit cited in support of this statement actually states: "No suicidal ideation at this time." (ECF No. 5-13, p. 4). Thus, I find there is substantial evidence of record to support this statement.

Finally, Plaintiff suggests that the ALJ's decision to issue the decision only to Plaintiff's counsel, via HALLEX I-2-8-35, and not Plaintiff was inconsistent with the ALJ's finding that Plaintiff's attempted suicide on May 11, 2015 was nothing "more than a transient episode that has satisfactorily resolved." (ECF No. 8, p 17). I disagree. I find under the circumstances that it was reasonable for the ALJ to exercise caution by issuing the unfavorable decision to Plaintiff's counsel only. Thus, remand is not warranted on this basis.

### D.    Residual Functional Capacity ("RFC") [2] and Weighing of Opinion Evidence

Plaintiff's next argument is that the ALJ's RFC determination "lacks substantial basis and ignores Dr. Rohrs' opinion that Plaintiff would be expected to miss more than three days of work per month…." (ECF No. 8, pp. 17-19). The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

---

[2] RFC refers to the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations. 20 C.F.R. § 416.945(a).

*Id.* § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r of Social Sec. Admin.*, No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008).

To begin with, contrary to Plaintiff's assertion, the ALJ did not ignore Dr. Rohrs' opinion that Plaintiff would miss work more than 3 times per month. Rather, he specifically

9

acknowledged this opinion and gave it little weight for several reasons: internal inconsistency, inconsistent with other medical evidence, inconsistent with other evidence of record, and because it was based in part on Plaintiff's subjective statements. (ECF No. 5-2, pp. 26-27). After a review of the record, I find the reasons given by the ALJ in weighing Dr. Rohrs' opinions to be valid and appropriate. *See,* 20 C.F.R. §§404.1527; 416.927 (Evaluating Opinion Evidence). Furthermore, I find the reasons to be sufficiently explained and supported by substantial evidence. (ECF No. 5-2, pp. 14-29). Additionally, I note that the ALJ did not give Dr. Rohrs' opinion little weight based on Plaintiff's travel to Japan, as Plaintiff suggests. *See,* ECF No. 5-2, pp. 26-27. Therefore, I find no error in this regard on the part of the ALJ.

Plaintiff also suggests the ALJ erred when he "cherry-picked" some GAF[3] scores over others. (ECF No. 8, p. 19). Plaintiff, however, fails to point to particular GAF scores that the ALJ ignored or did not consider. Therefore, I find this argument underdeveloped. Nonetheless, a review of the record reveals that throughout his decision, the ALJ referred to various GAF scores ranging from 40-60. (ECF No. 5-2, pp. 14-29). In the end, the ALJ gave little weight to GAF scores of 50 and below because:

> The treatment notes simply do not contain continuing and significant abnormalities on mental status examinations. Further, treating psychologist F. Bruce Rohrs, Ph.D., most recently reported on April 18, 2015, that the claimant's GAF is 58, and that 58 was the claimant's highest GAF over the past year (Exhibit 12F, p.1). Such an assessment indicates no worse than moderate symptoms and is consistent both with the majority of the mental status examination findings and with the remaining cumulative objective examination findings in the record."

---

[3]GAF is an acronym which refers to an individual's score on the Global Assessment of Functioning Scale. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). The scale is used to report the "clinician's judgment of the individual's overall level of functioning" in light of his psychological, social, and occupational limitations. *Id.* The GAF ratings range from 1 to 100. GAF scores are arrived at by a clinician based on his or her assessment of a patient's self-reporting. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). GAF scores do not have a direct correlation to the disability requirements and standards of the Act. *See*, 65 Fed. Reg. 50746, at 50764-65 (2000). In fact, as of May 18, 2013, the American Psychiatric Association no longer endorses the GAF scale as a measurement tool. *See,* Diagnostic and Statistical Manual of Mental Disorders (DMS-V) (5th ed. 2013). Nonetheless, GAF scores are still medical evidence that informs a Commissioner's judgment in assessing whether an individual is disabled.

(ECF No. 5-2, p. 25). Additionally, the ALJ gave little weight to the GAF scores, in general, because the most recent edition of the Diagnostic & Statistical Manual has abandoned GAF scores" to determine the RFC. *Id.,* at pp. 25-26. These are proper and valid reasons for discounting the GAF scores. Thus, I find the ALJ did not err in this regard and remand is not warranted on this basis.

  **E. Vocational Expert ("VE")**

Plaintiff's final argument is that the ALJ's decision "is not supported by substantial evidence because he relied upon an inaccurate hypothetical question to deny benefits." (ECF No. 8, pp. 19-20). I disagree. An ALJ is required to accept only that testimony from the vocational expert which accurately reflects a plaintiff's impairments. *See, Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Based on my review of the record and analysis above, I find there is substantial evidence that the ALJ's hypothetical questions accurately reflected Plaintiff's impairments. (ECF No. 5-2, pp. 14-29). Thus, I find no error in this regard. Consequently, remand is not warranted on this basis.

  An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES JOHN GOGAL,               )
                                )
        Plaintiff,               )
                                )
    -vs-                         )     Civil Action No. 17-144
                                )
NANCY A. BERRYHILL,[4]           )
COMMISSIONER OF SOCIAL SECURITY, )
                                )
        Defendant.               )

AMBROSE, Senior District Judge

## ORDER OF COURT

THEREFORE, this 27th day of March, 2018, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 7) is denied and Defendant's Motion for Summary Judgment (Docket No. 9) is granted.

                                BY THE COURT:

                                s/ Donetta W. Ambrose
                                Donetta W. Ambrose
                                United States Senior District Judge

---

[4] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.